**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| **PINNACLE SPAN PARTNERS L L C** | **CASE NO. 6:26-CV-00666** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ICON CRANES & EQUIPMENT L L C ET AL** | **MAGISTRATE JUDGE DAVID J. AYO** |

# MEMORANDUM RULING

Before the Court is a "Motion to Dismiss" (Doc. 18) filed by Defendants, Icon Cranes & Equipment, LLC ("Icon"), LBR1 Cranes, LLC ("LBR1"), and Andrew Robertson ("Robertson") (collectively referred to as "Defendants"), wherein Defendants move to dismiss Plaintiff, Pinnacle Span Partners, LLC's ("PSP") claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).

After the Motion to Dismiss was filed, Plaintiff requested an extension of time to respond and filed a Motion for jurisdictional discovery.[1] That Motion was granted and after the discovery was conducted, a Consent Motion to Withdraw[2] the Motion to Dismiss with regard to the Rule 12(b)(1) portion of the Motion was also granted. As such, the instant Motion will only address the remaining Rule 12(b)(6) and 12(b)(7) portions of the Motion.

[1] Doc. 23.
[2] Doc. 38

## BACKGROUND

Northern Crane, LLC ("Northern Crane") is a limited liability company that operates as a crane rental company.[3] Prior to February 2, 2026, Northern Crane's sole member and owner is PSP.[4] On or about February 2, 2026, PSP and Icon Cranes & Equipment LLC ("Icon") executed an Agreement for Sale and Assignment of Interest ("Sale Agreement") wherein Icon purchased PSP's entire membership interest in Northern Crane for $2,600,000.00 to be paid pursuant to a promissory note (the "Note").[5]

The terms of the Note require Icon to pay PSP $2,600,000.00 in full on March 31, 2027.[6] Pursuant to the terms of the Note, Icon agreed to endeavor to arrange financing to acquire certain assets and make specified interim payments to PSP.[7] The Sale Agreement provides that Seller, after making a $1,000,000.00 distribution from its current funds, that "as of the Closing ..., the Company shall have at least $400,000 cash on hand remaining in its bank accounts."[8] The Sale Agreement also expressly stated that "[t]he Company has performed work pursuant to which it has earned and is entitled to and reasonably expects to be paid within a reasonable time hereafter, at least $1,200,000.00.[9] PSP alleges that at the time of the Sale Agreement, Northern Crane had in excess of $1,200,000.00 in accounts

---

[3] Doc. 1, Complaint ¶ ¶ 8 and 9.
[4] *Id.* ¶ 10.
[5] *Id.* ¶ ¶ 11, 12, and 13, and exhibits 1 and 2.
[6] *Id.* ¶ 14.
[7] *Id.* ¶ 15.
[8] Complaint, att. exhibit 1, ¶ 4.3.
[9] *Id.* ¶ 4.5.

receivable.[10] Following the closing of the Sale Agreement, Icon withdrew cash in the amount of $303,210.74 from the Northern Crane bank accounts.[11]

PSP alleges that following the closing, Icon initially asserted ownership and control of Northern Crane, but then abruptly reserved course and refused to operate Northern Crane, failed to pay the employee's wages, make payments to vendors, or endeavor to arrange financing for the purchase of assets.[12] On February 11, 2026, PSP, through counsel sent a letter to Icon offering to unwind the transaction, void the Note, void equity transfers, and execute any necessary documents to place the parties in the position they were in prior to the Sale Agreement, in exchange for Icon returning the assets it had received as a result of the transaction.[13] Icon did not accept the offer.[14]

On February 13, 2026, Icon responded to PSP, through counsel and accused PSP of fraud, and informed PSP that "[t]he Agreement to purchase was executed and closed on February 2" and that "[PSP] has no right to operate the company at this time or exercise any other rights of ownership."[15] On February 22, 2026, Icon purported to unilaterally rescind the transaction and averred that PSP "is once again, and remains, the owner of Norther [sic] Crane, LLC."[16]

---

[10] Complaint, ¶ 18.
[11] *Id.* ¶ 20.
[12] *Id.* ¶ ¶ 21 and 22.
[13] *Id.* ¶ 23.
[14] *Id.* ¶ 24.
[15] *Id.* ¶ 25.
[16] *Id.* ¶ 26.

PSP has asserted claims of (1) breach of contract; (2) unfair trade practices; (3) conversion; and (4) unjust enrichment. PSP requests that the Court validate the Agreement for Sale and Assignment of Interest and the related Note as of February 2, 2026, and declare that Icon is the sole owner/member of Northern Crane, and PSP has no ownership or membership interest in Northen Crane as of February 2, 2026; and Icon, not PSP is responsible for any defaults or obligations of Northern Crane that have arisen since February 2, 2026. PSP also seeks to be awarded damages sustained as a result of Defendants' actions and inactions.

After filing the Complaint, PSP filed a Motion to Appoint Custodian Receiver over Northern Crane.[17] Due to the complexity of the case, including but not limited to jurisdictional issues, and the accusations being made by the adverse parties, the Court has not ruled on that Motion.

## RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224

[17] Doc. 10.

F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

*Conversion of property and unjust enrichment regarding money withdrawn from Northern Crane accounts*

PSP informs the Court that it will not pursue conversion and unjust enrichment related to the withdrawal of funds from the Northern Crane accounts as independent causes of action because those claims belong to Northern Crane.[18] As such, the Motion to Dismiss in that regard will be granted dismissing PSP's claims of conversion and unjust enrichment against Defendants as they relate to the alleged withdrawal of funds by Icon and Robertson from Northern Crane accounts.

[18] Memorandum in opposition, pp. 2-3. Doc. 40.

PSP also advises the Court of the necessity of a receivership being appointed for Northern Crane to protect its legal rights, which may be prejudiced without said appointment. PSP re-urges its request that the Court grant its motion to appoint a temporary receiver.[19] Considering PSP's request the Court will set a hearing as to PSP's Motion to appoint a temporary receiver.

*Breach of promissory note*

In its claim for breach of contract, PSP identified Icon's alleged breaches of the Sale Agreement: (1) Icon's failure to endeavor to arrange financing for cranes identified in the Interim Payment Schedule,21 (2) Icon's failure to make interim payments, and (3) Icon's anticipatory breach of its payment obligations.

PSP alleges that Icon breached the promissory note because it failed to endeavor to arrange financing. Icon maintains that the Complaint fails to allege facts to support PSP's conclusory allegation.

PSP's breach of contract claim with regard to this particular breach is derived from the following provision in the promissory note:

> During the period prior to the aforementioned maturity date, Borrower shall endeavor to arrange financing to acquire each asset listed on Schedule 1 for the scheduled acquisition price. As it is successful in doing so and does so to purchase and acquire each asset, then upon the closing of such purchase Borrower shall owe and pay to Lender the amount scheduled as Lender's Equity for that asset.[20]

---

[19] Doc. 10.
[20] Doc. 1-2, ¶ 4, Promissory Note.

Icon contends that PSP's claim fails because the Note, which matures on March 31, 2027, has yet to mature, and as such, Icon has until that date to endeavor to arrange financing. The Court agrees with Icon. The first sentence of this provision expressly states the Borrower (Icon) shall endeavor to arrange financing "[d]uring the period prior to the aforementioned maturity date," and as such, there can be no breach. The Court finds that this claim fails as it relates to arranging financing to purchase the cranes.

Icon does not move to dismiss an anticipatory breach in its Motion to Dismiss. Therefore, the Court is not inclined to address a dismissal of this claim.

Next, PSP has alleged that Icon breached the promissory note by failing to make the interim payments, whereas Icon contends that this claim is premature because the promissory note has not reached its maturity date—March 31, 2027.

PSP has alleged that the interim payments were linked to financing obligations for the purchase of certain cranes and the first applicable refinancing deadline was April 30, 2026.[21] However, PSP has not moved to dismiss this breach of contract claim, and as such, the Court will not address it.

*Conversion claims related to the $200,000 purchase by PSP of Icon Class B units*

Icon moves to dismiss PSP's conversion claim based on PSP's wire transfer to LBR1 for $200,000 to purchase Icon Class B units. Icon contends that this claim involves a breach of contract claim, not conversion.

---

[21] Complaint, ¶ 39, Doc. 1.

PSP asserts that it has not alleged that a contract for the purchase of the membership units in Icon was perfected, so there is no alternatively pled breach of contract claim. PSP explains that while PSP and Robertson were negotiating the terms of the purchase of membership units, PSP sent LBR1 $200,000 for the purchase of the units. An agreement was never finalized. PSP never alleged that an agreement had been perfected, and Defendants have denied that an agreement was perfected. Yet, LBR1 and Robertson have refused to return the $200,000 payment.

Additionally, PSP contends that even if an agreement was perfected, conversion and breach of contract may be pled together. PSP argues that it sent the money for the purchase of the units to LBR1 and Robertson, and yet LBR1 and Robertson did not issue the units or return the money, and thus have wrongfully retained the money. See *Broussard, Bolton, Halcomb, & Vizzier v. Williams,* 796 So.2d 791, 796 (La. App. 3 Cir. 10/03/01) (the Louisiana Third Circuit Court of Appeal held that a suit that alleged that the defendant had taken possession of funds that the plaintiff had a contractual right in had "stated a cause of action for breach of contract *and* conversion.). The Court finds that PSP may pursue its conversion claim for the $200,000 wire transfer.

*Unfair trade practices*

Icon moves to dismiss PSP's claim under Louisiana's Unfair Trade Practices and Consumer Protection Law ("LUTPA"). LUTPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A). Courts must

decide, "on a case-by-case basis, what conduct falls within the statute's prohibition." *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1059, p. 10 (La. 4/23/10) The Louisiana Supreme Court has instructed that "only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." *Id.* at 1060. Therefore, "the range of prohibited practices under LUTPA is extremely narrow." *Id.*

Icon contends that this case is about an alleged breach of contract and not LUTPA, noting that LUTPA does not provide an alternate remedy for simple breaches of contract. *Cheramie*, 35 So.3d at 1060 (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993)). Icon faults PSP's Complaint for its insufficient factual allegations to satisfy the high standard of egregious behavior LUTPA requires.

PSP argues that this case is not about a simple breach of contract but includes a bad-faith, willful breach of contract executed with deception and misrepresentations. In its Complaint PSP alleges that Defendant closed an equity sale transaction, depleted the company of its assets, willfully defaulted on contracts with vendors, failed to pay employee's wages, and then unilaterally purported to return the company to the seller, which resulted in actual damages.[22] Additionally, PSP alleges that it wire transferred $200,000 to LBR1 in exchange for Class B units of Icon, which Icon refused to issue to PSP. PSP argues that Icon's actions are the hallmark of fraud.

[22] Complaint, ¶ 50.

As noted by PSP, the "determination of what constitutes an unfair trade practice is fact-sensitive and, as such, can only be decided on a case-by-case basis." *McFadden v. Imp. One, Inc.*, 56 So.3d 1212, 1219-20 (La. App. 3 Cir. 02/09/11), quoting *Doland v. ACM Gaming Co.*, 921 So.2d 196, 2020 (La. App. 3 Cir. 12/30/05). There is no bright-line rule that a LUTPA claim and breach-of-contract claim cannot coexist; instead, the Court must look at the conduct underlying the breach to determine "whether [the] conduct rises to a level so as to be deemed unfair trade practices." *Id.* at 1221. "In order to recover under LUTPA a plaintiff must prove 'some element of fraud, misrepresentation, deception, or other unethical conduct' on the part of the defendant." *Cheramie Servs. v. Shell Deepwater Prod.*, 35 So. 3d 1053, 1059 (La. 04/23/10).

Considering the allegations as true and in a light most favorable to PSP, the Court finds that the Complaint alleges sufficient facts to state a claim for unfair trade practices.

*Claims against Defendant Robertson*[23]

PSP alleges that Defendant, Andrew Robertson is the sole member of Defendant, LBR1 Cranes, LLC. PSP has asserted claims against Robertson for unfair trade practices, conversion, and unjust enrichment.

PSP alleges that Robertson, on behalf of Icon, falsely informed Northern Crane's clients and vendors that the sale of Northern Crane did not close.[24] This allegedly caused

---

[23] As noted by PSP, the Court will not consider Robertson's declaration filed as an attachment to Icon's motion to dismiss.

[24] Complaint, ¶ 27, Doc. 1.

Northern Crane to (1) have no management with authority to operate the company, (2) default on payment obligations to employees and vendors, (3) default on lease payments further causing several cranes to be repossessed, (4) lose financing opportunities, and (5) lose business opportunities, including a $6.5 million contract.

Additionally, On January 30, 2026, PSP sent a wire transfer to LBR1 for $200,000 in exchange for Class B units of Icon, but LBR1 failed to issue said Class B units to PSP.[25] PSP notes that it does not intend to pursue claims of unjust enrichment or conversion that properly belongs to Northern Crane. As such, any claims for unjust enrichment or conversion asserted by PSP that would belong to northern Crane will be dismissed for lack of standing. In that vein, PSP asserts that Northen Crane has a cause of action for conversion, unjust enrichment, breach of fiduciary duty, fraud, and other claims. PSP also reiterates the necessity for the Court to appoint a receiver for Northern Crane to assert its legal rights.

PSP contends that Robertson's limited liability does not insulate an LLC member from liability for his own fraud or wrongful acts, noting that Louisiana Revised Statute § 12:1320(D) expressly excepts such conduct from the liability shield. Here, PSP explains that it seeks to hold Robertson liable for conduct that he directed and committed himself. PSP remarks that courts have permitted a plaintiff to proceed against a corporate official when the plaintiff had alleged that the defendant "directly represented to plaintiffs that he

---

[25] *Id.* ¶ ¶ 29 and

would sell their mobile home," plaintiffs relied on the representation, the defendant placed title in his business's name and did not pay for the home. *Sewell v. Coviello*, 2016 Del. C.P. LEXIS 29, *7 (Del. Ct. C.P. Kent Cty. Mar. 8, 2016).

Here, PSP alleges that Robertson directly represented to PSP that Icon would purchase Northern Crane, PSP relied on that representation and transferred assets to Icon. Icon has not paid for Northern Crane and allegedly has manifested an intention to not pay for Northern Crane. As such, PSP contends that Robertson is not named solely as a member/owner, but also personally because of his direct participation in tortious conduct committed against PSP.

The Complaint alleges that "Icon, LBR1 and/or Robertson engaged in unfair and deceptive acts by, *inter alia,* agreeing to purchase Northern Crane, withdrew substantial cash assets from Northern Crane, willfully defaulted on contracts with vendors, failed to pay wages of its employees and repudiated the Sales Agreement, and purported to unilaterally rescind the sale.[26] Here, it is unclear as to who did what. The Complaint is vague at best as to Robertson's direct participation in the aforementioned allegations. For example, while Robertson may have withdrawn cash assets,[27] these allegations could be interpreted to mean that Robertson personally withdrew said assets or he withdrew these assets on behalf of Icon or LBR1.

---

[26] Complaint, ¶ 50, Doc. 1.

[27] The Court notes that under the Rule 12(b)(1) standard and the motion to dismiss, we must consider these allegations as true.

The Complaint also alleges that "[f] ollowing the execution of the Sale Agreement, Defendants Icon, LBR1, and/or Robertson, withdrew financial assets in the amount of $303,210.74 from the accounts of Northern Cranes,"[28] and Icon, LBR1, and Robertson have failed to return to Northern Crane the financial assets that were withdrawn prior to the purported rescission of the sale."[29] Additionally, the Complaint alleges that "[f]ollowing the execution of the Sale Agreement, Defendants Icon, LBR1, and/or Robertson, withdrew financial assets from the accounts of Northern Crane,"[30] and failed to return to Northern Crane the financial assets that were withdrawn prior to the purported rescission of the sale."[31]

PSP contends that Robertson directly participated in tortious conduct when he personally negotiated the Northern Crane transaction, he personally induced PSP to wire the $200,000, all of which were Robertson's own decisions and conduct. These are PSP's arguments, but there are no factual allegations in the Complaint to distinguish Robertson's actions as a member/owner from personal conduct. Moreover, the Complaint fails to allege that Robertson personally induced PSP to wire the $200,000. Instead, it alleges that PSP wired the money to LBR1 and LBR1 and retained the payment but failed to issue the shares.[32]

[28] *Id.* ¶ 57.
[29] *Id.* ¶ 59.
[30] *Id.* ¶ 65.
[31] *Id.* ¶ 67.
[32] *Id.* ¶ ¶ 55 and 56.

PSP asserts that this is not a case where actions were authorized by a board of managers, but instead these actions were made solely by Robertson as the sole maker and actor. However, that Robertson took these actions solely, either out of the scope of his authority, or without manager approval is not alleged in the Complaint. There are no allegations as to how the limited liability company is structured, and/or who has the authority to make such decisions, nor are there allegations that the limited liability company's manager or board meeting failed to authorize Robertson's actions. Be that as it may, and accepting PSP's allegations of Robertson's conduct, the Court will allow PSP to amend its Complaint to assert factual allegations that Robertson's conduct was that of his own, and not on behalf of Icon or LBR1.

The Court notes that PSP argues an alter-ego/veil-piercing doctrine to hold Robertson personally liable. PSP argues that its allegations plausibly support the remedy of veil piercing because Robertson allegedly exercised complete control of Icon and LBR1 and used those entities as instrumentalities to accomplish his alleged wrongful conduct. PSP posits that "whether the veil of Icon and LBR1 may be pierced presents a fact-intensive inquiry that should not be resolved against PSP at the pleading stage, particularly before discovery into the entities' ownership, capitalization, finances, governance, observance of formalities, and transactions with Robertson and the entities." However, the Complaint is completely silent as to any factual allegations to assert Robertson's potential liability under

an alter-ego/veil-piercing doctrine, and as such PSP's claims in this regard will be dismissed.

## RULE 12(b)(7) STANDARD

Icon contends that Northern Crane is a necessary party to this litigation because Pinnacle's claims (and requests for declarations) place Northern Crane's governance, rights, liabilities, receivables, cash, and vendor/employee relationships squarely at issue. For example, Pinnacle specifically seeks declarations adjudicating who owns Northern Crane, who controls Northern Crane, and who bears Northern Crane's liabilities since closing.

Additionally, Icon asserts that adjudicating the issues without Northern Crane would impair the Court's ability to accord complete relief among the existing parties and risk multiple or inconsistent obligations. However, Icon argues that the joinder of Northern Crane is not feasible because the Court would have to determine the citizenship of each of Northern Crane's members, and if the Court concluded that Northern Crane had the same citizenship as either Pinnacle or Icon, joinder would destroy the Court's subject matter jurisdiction.

PSP argues that joinder is not necessary.

Federal Rule of Civil Procedure 12(b)(7) allows a party to bring a motion to dismiss a complaint for failure to join a party under Rule 19. The Federal Rules of Civil Procedure "seek to bring all persons that may have an interest in the subject of an action together in

one forum so that the lawsuit can be fairly and completely disposed of." *Mach Flynt Inc. v. Veritiv Operating Co.*, 2025 WL 761744, at *7 (W.D. La. Mar. 10, 2025) (Cain, Jr., J.) (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986)). The joinder determination is a two-step process. First, the court must decide if the absent party is a necessary party to the action under Rule 19(a). Second, if the absent party is a necessary party, but its joinder is not feasible, the court must decide whether the absent party is an "indispensable" party to the action under Rule 19(b). "The burden of proof starts with the movants, but if at first glance it appears a 'possibly necessary party is absent,' the burden shifts to the nonmovant to dispute that 'initial appraisal' of the facts." *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 266 (5th Cir. 2022).

Under Rule 19(b), the court examines the following four factors to determine whether the case should proceed without the unjoined party, or whether that party is indispensable:

> (1) to what extent a judgment rendered in the party's absence might be prejudicial to that party or others in the lawsuit; (2) the extent to which, by protective provisions in the judgment, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the party's absence will be adequate; and (4) whether the plaintiff will have an adequate remedy if the party cannot be joined.

*Muirfield (Del.), L.P. v. Pitts, Inc.*, 17 F. Supp. 2d 600, 607 (W.D. La. 1998).

PSP asserts that the only issue involving Northern Crane in this litigation is whether the sale of the membership interest in Northern Crane was valid. If valid, Icon is the

owner/sole members, whereas if the sale is not valid, PSP is the owner/sole member. PSP argues that a dispute over the sale does not require Northern Crane to be a party under Rule 19. See *Muirfield (Del.), L.P. v. Pitts, Inc.*, 17 F.Supp.2d (W.D. La. 1998) (finding that the subject partnerships were not indispensable parties that involved a breach of a contractual agreement). Here, the parties (Icon and PSP) are disputing the validity of a Sale Agreement and breach of a promissory note. As noted by PSP, Northern Crane is not a party to the Sale Agreement and therefore cannot assert any rights or obligations under the Sale Agreement. The Court finds that Northern Crane is not an indispensable party under Rule 19 of the Federal Rules of Civil Procedure.

## CONCLUSION

For the reasons explained herein, the Court will deny Icon's motion to dismiss Robertson at this time and allow PSP to amend its Complaint to more particularly assert Robertson's alleged personal involvement as to PSP's claims of unfair trade practices, conversion, and unjust enrichment; the Court will grant Icon's motion to the extent that PSP's claims of alter-ego and/or veil-piercing will be dismissed.

The Court will deny Icon's motion to dismiss PSP's breach of contract claim and unfair trade practice under LUPTA; grant PSP's motion to dismiss its conversion and unjust enrichment claims as they relate to the alleged withdrawal of funds by Icon and Robertson from Northern Crane accounts; and deny PSP's motion as to BRL1 and

Robertson's conversion of $200,000 PSP wired to BRL1 in exchange for Class B units of Icon. Lastly, the Court will deny PSP's motion to dismiss based on joinder.

Additionally, the Court will set a hearing to address PSP's Motion to Appoint Custodian Receiver over Northern Crane, LLC (Doc. 10).

**THUS DONE AND SIGNED** in chambers on this 9th day of November, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**